ROGER K. LITMAN, 57634
Attorney at Law
Civic Center Square
2300 Tulare Street, Suite 230
Fresno, California  93721
Telephone:  (559) 237-6000

Attorney for Defendant, PAUL WHITMORE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO:  CRF-02-5301 OWW |
| Plaintiff, ) | |
| v. ) | **DECLARATION OF ROGER K. LITMAN** |
| PAUL WHITMORE, ) | |
| Defendant. ) | |
| _____) | |

Roger K. Litman declares:

1. I am the attorney of record for defendant Paul Gordon Whitmore in the instant action. I have personal knowledge regarding all facts set forth in this declaration, except as to facts alleged on the basis of information and belief.

2. I was appointed to represent Mr. Whitmore on August 22, 2002. At the time of my appointment, Mr. Whitmore was in custody at the Fresno County Detention Facility.

3. At all times while I was representing Mr. Whitmore, until July 26, 2006, it was my belief that he was in federal custody. This belief was based on the fact that the jail records reflected that Mr. Whitmore had a hold for the United States Marshal's Office and the fact that San Diego Superior Court did not have a hold on Mr. Whitmore at the Fresno Detention Facility. Also, the fact that Judge Wanger's order of August 14, 2003, a copy of which was served on me, recited

1

that Mr. Whitmore was in the custody of the United States Marshal, supported my understanding.  In addition, the fact that it was necessary for San Diego Superior Court to obtain Judge Wanger's permission to remove Mr. Whitmore from the Fresno County Jail for the purpose of transporting him to San Diego to appear in his state action, confirmed in my mind that Mr. Whitmore was in federal custody.

4. My understanding concerning Mr. Whitmore's custody status was confirmed by the fact that Judge Wanger's permission was needed to permit Mr. Whitmore to remain in San Diego beyond the date originally permitted by Judge Wanger.

5. At no time before April 20, 2004 did I know that Mr. Whitmore's presence in Fresno had been secured by a Writ of Habeas Corpus issued by Judge Beck at the request of Mr. Conklin.

6. At all times before April 20, 2004 when I was negotiating with then Assistant United States Attorney Jonathan Conklin, including while I was negotiating the terms of Mr. Whitmore's waiver of jury trial, it was my belief that Mr. Whitmore was in federal custody.

7. In making recommendations to Mr. Whitmore, and formulating strategy, I relied upon the information known by me concerning Mr. Whitmore's custody status.  I did not know that Mr. Conklin had secured Mr. Whitmore's presence in Fresno by means of a Writ of Habeas Corpus Ad Prosequendum before I was appointed as Mr. Whitmore's attorney in this action.

8. On July 26, 2006, I contacted the Bureau of Prisons, Correctional Programs, Inmate Systems to inquire regarding language needed to effectuate the plea agreement in this action that Mr. Whitmore first served his federal sentence in federal custody before being released to the State of California to serve the sentence imposed by the state court judge in San Diego County.

9. When I did not receive a return call from the Bureau of Prisons, I went to the United States Marshal's Office where I spoke with Susan M. Perry, Legal

Technician for the United States Marshal's Service in Fresno.

10. In the course of discussing my efforts on behalf of Mr. Whitmore, I learned, for the first time, that Mr. Whitmore was considered by the Federal Bureau of Prisons and the Department of Corrections to be a state prisoner who was released to the federal authorities for prosecution in this action by virtue of a Writ of Habeas Corpus issued by United States Magistrate Judge, Honorable Dennis L. Beck on October 8, 2002, at the request of Mr. Conklin.

11. Ms. Perry provided me with a copy of the writ issued by Judge Beck on October 8, 2002. Before July 26, 2006, I was unaware that Mr. Whitmore's presence was secured by Mr. Conklin via a Writ of Habeas Corpus. The first time I saw the writ was when Ms. Perry provided me with a copy.

12. On July 26, 2006, I further learned that, in the opinion of the Federal Bureau of Prisons and the State Department of Corrections, that when Mr. Whitmore was transported on various occasions to San Diego for appearances in the state action, he was being returned to state custody.

13. Based on all information then known to me, I was at all times, until July 26, 2006 under the belief that Mr. Whitmore was in federal custody subject to release to the state authorities via Writs of Habeas Corpus Ad Prosequendum.

14. A few days later, I read and printout the declaration and attachments submitted by Katherine Hart, Esq. (Docket #: 564) pertaining to her client Brooke Rowland. In addition, I obtained a copy of the letter of August 3, 2006 on Federal Bureau of Prisons' letterhead from Maureen Baird to Susan M. Perry. As soon as I read that letter, I formed the professional opinion that the assessment by the Federal Bureau of Prisons as to Mr. Rowland being in primary custody of the State of California, was identical to the assessment which the Bureau of Prisons would form as to Mr. Whitmore. I reached this conclusion because of the parallels between Mr. Rowland's custody status and that of Mr. Whitmore. That is, they were both brought to Fresno for prosecution in the instant action via a Writ of

Habeas Corpus Ad Prosequendum. The only distinction between the two was that Mr. Whitmore had yet to be sentenced.

15. After obtaining a copy of Ms. Baird's letter to Ms. Perry, I again spoke with Ms. Perry and confirmed the following: Mr. Whitmore is also classified by the Bureau of Prisons and the Department of Corrections as a primary state prisoner. Mr. Whitmore had not accrued any time credits on his federal case, because the Federal Bureau of Prisons considered him, at all times until he is sentenced in this action, to be a state prisoner not eligible for time credits.

16. Ms. Perry advised me that based on Mr. Whitmore's classification as a primary state prisoner, no matter what order was made by Judge Wanger in this case regarding initial imprisonment of Mr. Whitmore in federal prison, Mr. Whitmore would be released to the California Department of Corrections to serve his sentence of 467 years and 8 months to life in state prison. In addition, Ms. Perry advised me that even if Judge Wanger ordered Mr. Whitmore to initially serve his sentence in this case at the Federal Bureau of Prisons, that the Bureau of Prisons would not take him, but would, instead, deliver him to the California Department of Corrections. The court, according to Ms. Perry, would be without power to override that decision regarding place of imprisonment.

17. On October 12, 2006, I telephoned the Federal Bureau of Prisons to attempt to confirm the accuracy of the information provided by Ms. Perry. I did so only because, Assistant United States Attorney David Gappa, and to a certain extent now Judge Conklin, expressed skepticism regarding the foundation for, and accuracy of, information provided to me by Ms. Perry regarding Mr. Whitmore's legal status. I spoke with an employee in the correctional program's department of the Federal Bureau of Prisons and was, to my satisfaction, able to confirm the accuracy of the information provided by Ms. Perry. The employee of the Bureau of Prisons advised me that it was a fair assessment that Mr. Whitmore was in the same situation as Mr. Rowland and that once Mr. Whitmore was sentenced to

prison, he too would be determined to be in the primary custody of the State of California, merely borrowed by the federal government for the purpose of prosecuting him in this action. I verified with the employee that from the perspective of the Federal Bureau of Prisons, Judge Wanger did not have the legal authority to force the Federal Bureau of Prisons to permit Mr. Whitmore to initially serve his federal sentence before being turned over to the state authorities.

18. Ms. Perry advised me that she advised Mr. Conklin, before Mr. Whitmore was initially brought to Fresno via writ, that he should wait until the state court action was completed to bring him to Fresno for prosecution in this action in order to avoid issues of custody status and time credits.

19. Based on information that he provided to me, I prepared the declaration of Paul Whitmore dated October 13, 2006. I visited Mr. Whitmore at the Fresno County Detention Facility, allowed him ample time to review his declaration and observed him to sign the declaration after advising me that the contents were true and correct.

20. I have reviewed Mr. Whitmore's declaration. Paragraphs 2, 3, 4, 5, 8, 9 and 13 are true and correct.

21. The contents of my declarations in this matter filed on July 26, 2006, August 29, 2006, September 22, 2006 and September 29, 2006 are all true and correct. The contents of each aforementioned declaration are incorporated herein by this reference as though fully set forth herein.

I declare the foregoing is true and correct subject to the penalty of perjury under the laws of the United States.

Executed this 13th day of October,. 2006 at Fresno, California.


/s/ Roger K. Litman
ROGER K. LITMAN

5