UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HON. OLIVER W. WANGER, JUDGE

UNITED STATES OF AMERICA,    )
                             )
        Plaintiff,           )    No. CR-F-02-5301
                             )
vs.                          )    WAIVER OF JURY TRIAL
                             )      BY MR. WHITMORE
DANIEL BOOBAR and            )
PAUL GORDON WHITMORE,        )
                             )
        Defendant.           )
_____  )

Fresno, California                Wednesday, April 14, 2004


REPORTER'S TRANSCRIPT OF PROCEEDINGS



Reported by Karen Lopez, RMR-CRR, Official Court Reporter

APPEARANCES OF COUNSEL:

For the Plaintiff:          United States Attorney's Office
                            BY: **JONATHAN CONKLIN**
                            and **DAVID GAPPA**
                            3654 Federal Building
                            1130 O Street
                            Fresno, California 93721

For the Defendant           **ERIC K. FOGDERUDE**
Daniel Boobar:              Fletcher & Fogderude
                            5412 North Palm Avenue
                            Suite 101
                            Fresno, California 93704

For the Defendant           **ROGER K. LITMAN**
Paul Whitmore:              Attorney at Law
                            2300 Tulare Street
                            Suite 230
                            Fresno, CA 93721

1                                       <u>INDEX</u>

2

3                                     EXHIBITS

4

<u>COURT EXHIBIT</u>                                                      <u>Received</u>

5      1                                                                  20

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  Wednesday, April 14, 2004          Fresno, California

2  1:31 p.m.

3          THE CLERK:  Item one is criminal F-02-5301.  United

4  States versus Paul Whitmore and Daniel Boobar.  Trial

5  confirmation and motions in limine.

6          MR. CONKLIN:  Jon Conklin and David Gappa for the

7  United States.

8          MR. FOGDERUDE:  Yes, good afternoon, Your Honor, Eric

9  Fogderude appearing in court with Daniel Boobar.

10          MR. LITMAN:  Good afternoon, Your Honor, Mr. Whitmore

11  is present in court with counsel Roger Litman.

12          THE COURT:  All right.  This is the time set for

13  trial confirmation.  We also have a number of motions that

14  have been filed by each party.  And I want to first confirm

15  that we are ready to commence trial next Tuesday, which would

16  be the 20th of April.

17          MR. CONKLIN:  Yes, Your Honor.  The government is

18  ready.

19          MR. LITMAN:  Yes, ready on behalf of Mr. Whitmore,

20  Your Honor.  We have a document that I'd like Mr. Whitmore to

21  sign in open court.  It's a waiver of jury trial.  I think we

22  alerted that -- the Court to that --

23          THE COURT:  You've alluded to it in your papers.

24          MR. LITMAN:  Correct.  And we have agreed on language

25  for a waiver of jury trial that Mr. Gappa and Mr. Conklin and

1   I have signed it, Mr. Whitmore is going to sign it.  And we
2   would ask Your Honor to have the Court review that, make sure
3   that it's acceptable and in my view, once we do that, that
4   moots our motions in limine, which are geared for a jury
5   trial.

6           MR. CONKLIN:  Your Honor, so the Court is aware.
7   This waiver is a waiver of a jury trial, waiver of the
8   defendant's right to cross-examine, a waiver of the
9   defendant's right to argue, a waiver of the defendant's right
10  to confront witnesses, which is another way of saying
11  cross-examine.  Essentially what the -- and a waiver of the
12  defendant's rights to make any evidentiary objections,
13  including foundational objections.

14          The way the parties would anticipate proceeding next
15  week, and we'll have discussion with the Court, would be to
16  proceed on Mr. Whitmore first with one summary witness who we
17  anticipate would take one to two hours to testify.

18          And at the conclusion of that, the government and the
19  defense would then submit and ask the Court to make the
20  appropriate finding based upon that evidence and we would then
21  proceed separately to trial against Mr. Boobar.  None of these
22  waivers affect Mr. Boobar.

23          THE COURT:  All right.  Let me say this, because I
24  haven't seen the document yet.

25          MR. LITMAN:  Yes.

1          THE COURT:  And so although there is much more
2   proposed by Mr. Conklin's statement than normally would be
3   implicated in a waiver of a right to jury trial, on that
4   subject the law has been, I think, established starting with
5   United States -- I should say *Singer versus United States*,
6   which is found at 380 United States at page 24 is the starting
7   page of the case.

8          Basically, in interpreting Federal Rule of Criminal
9   Procedure 23, the Supreme Court has held, and this has not
10  been either modified or overruled or disapproved in any case
11  since it, that a defendant's only method, as far -- of trial,
12  under the constitution, is to an impartial trial by jury.  And
13  the Supreme Court finds no constitutional impediment to a
14  waiver of the right where there is a consent of the
15  prosecuting attorney and a consent independently of the judge.

16         However, the corollary of that, in other words, the
17  right that there is a jury trial is not, if you will,
18  inversely present.  The right to demand a bench trial does not
19  exist.  In other words, the only time a bench trial would be
20  found to be appropriate is if there is a knowing, voluntary
21  and intelligent waiver with all of the admonitions and in
22  effect, as I read the Ninth Circuit authorities, the Court
23  actually has to inquire of the defendant individually and
24  establish, as we would any other waiver, the competency, the
25  voluntariness and the knowledge of what rights are being given

1   up so that it's very clear.  And that, again, is something

2   that all parties, including the judge, have to agree to.

3            And the cases that I refer to are *United States*

4   *versus Reyes*, which is found at 8 Fed 3d 1379, which holds

5   that a failure to obtain the appropriate waivers

6   and -- against the argument -- there were two issues that were

7   raised.  One was that the government should have explained why

8   it did not want a jury trial when the defendant claimed that

9   either because of pretrial publicity or other prejudicial

10  factors, a fair trial with a jury could not be obtained.

11           The Court held that the government is not required to

12  state a reason for objecting to a waiver of jury trial and

13  requiring a jury trial.  As an out of circuit case is cited, a

14  judge does not have to agree to a bench trial.  And though, in

15  that case there would have been substantial publicity, this is

16  in a criminal case, the judge's declination of the proposed

17  waiver of right to jury trial was upheld.  That's a case

18  called *United States versus Morlang* that is found at 531 Fed

19  2d 183.  It's a Fourth Circuit case.

20           And so we have to have at least two levels of

21  inquiry.  We have to have a detailed inquiry into the reasons

22  why the waiver of jury trial is sought, the justification for

23  having a non-jury trial because the cases do say that there

24  can be instances, if there is evidence to this effect, that

25  circumstances can be so prejudicial, whether it's because of

1 | publicity or for other reasons, that a defendant could not
2 | receive a fair trial with a jury, then there is the
3 | opportunity under Federal Rule 23.

4 | But again, the defendant can't be forced to do it,
5 | the government can't be forced to do it and the judge can't be
6 | forced to do it even if both the parties agree.  Each has to
7 | make their own separate and independent determination as to
8 | the merits and the demerits.

9 | And neither side -- if you insist on your right to
10 | jury trial, Mr. Whitmore, we can't inquire of why that is.
11 | That is your right under the constitution and you're entitled
12 | to it no matter what.  Same if the government says no, we
13 | don't want a bench trial, they don't have to be required to
14 | justify why they don't want a jury trial.  And if the Court
15 | says I'm not going to accept the waivers, unless there is
16 | further argument about why it would be prejudicial, the Court
17 | probably does have to give reasons in the interest of safety,
18 | although there's no what I would call right on either party to
19 | require the Court to do it.

20 | And so that's my understanding of the law.  And then
21 | in the event that the parties and the Court agree that the
22 | case is appropriate for there to be a waiver of jury trial,
23 | then the Court is required to conduct the separate and the
24 | independent inquiry as to the knowing, voluntary and
25 | intentional nature of the waiver.

1    And that authority is found in the Ninth Circuit
2  case -- if you bear with me one moment -- of *United States*
3  *versus Duarte-Higareda*, 113 Fed 3d 1000.  And there a judge in
4  the Southern District was reversed for not getting adequate
5  explanations and obtaining from the defendant the foundational
6  information to justify a waiver.  And so where we are now is
7  that I understand you have a stipulation to propose.  I
8  haven't seen it or read it.  And so I would have to do that
9  and then we would have to -- after I determine what my view is
10  of that, we would have to make the appropriate record.

11    MR. LITMAN:  Your Honor, just for the record, I have
12  a five-page waiver, which is in the form of a pleading.  I
13  have met with Mr. Whitmore, gone over that.  I've signed it.
14  Mr. Conklin and Mr. Gappa have signed it.  And I deferred
15  because I wanted the Court to see Mr. Whitmore signing it in
16  open court.

17    THE COURT:  All right.  Let me ask:  Mr. Whitmore,
18  you are being asked by your attorney to sign this document.
19  Have you reviewed the agreement?  It's a stipulation.  In it's
20  entirety?

21    THE DEFENDANT:  Yes, I have.

22    THE COURT:  Have you discussed it fully with your
23  attorney Mr. Litman?

24    MR. WHITMORE:  I have one more further for him before
25  I sign.

1    THE COURT:  All right.  And I want to be able to
2  confirm with you that you completely understand it and that
3  you agree with it and recognizing I have to explain the rights
4  to you, if you are going to give up rights that you're giving
5  up, so that you fully understand what those consequences are
6  today and in the future.  And so you have a question, you may,
7  communicate with your attorney.

8          (Discussion between the defendant and Mr. Litman.)

9          For the record, it appears that Mr. Whitmore is now
10  signing the document to which Mr. Litman has referred.

11          And let me ask, Mr. Fogderude, as to Mr. Boobar, will
12  we be proceeding with a jury trial on all issues?

13          MR. FOGDERUDE:  Your Honor, it's my belief and our
14  intention to proceed forward next week with the trial.  We
15  have certain motions that are pending.

16          THE COURT:  Yes.

17          MR. FOGDERUDE:  Which deal with, in part, Your Honor,
18  new exhibits that are being presented to us, which we are
19  arguing violate the final state order that the Court
20  previously made.  And when I find out what the Court's ruling,
21  when you hear the arguments pro and con for admission of those
22  items, that in turn might impact our decision as to whether we
23  want to proceed or whether we will need more time.

24          MR. CONKLIN:  And the government is not prepared to
25  waive jury today regarding Mr. Boobar.

1        THE COURT:  All right.

2        MR. FOGDERUDE:  This has nothing to do with the jury,

3   this is --

4        THE COURT:  These are the other motions.  I was only

5   talking about the issue of the jury trial.

6        MR. FOGDERUDE:  Right.

7        THE COURT:  All right.  So there's not going to be a

8   waiver in Mr. Boobar's case.

9        MR. CONKLIN:  Not as of today.  I still need to talk

10  to Mr. Fogderude.  If there's certain stipulations that he'd

11  be willing to submit, we may be willing to consider that.  But

12  quite frankly, at this point, I anticipate proceeding by way

13  of jury for Mr. Boobar.

14       THE CLERK:  She's got the special jury lined up, so

15  we're going to have to know as soon as possible.

16       THE COURT:  We have a large panel of specially

17  qualified, in terms of their ability to serve for six or eight

18  weeks.  And so we need to know very, very quickly.

19       MR. CONKLIN:  We won't waive jury, Your Honor.

20       THE COURT:  All right.  In the -- if the parties will

21  now give me the opportunity, I'm going to read this document.

22       All right.  I have read the waiver of jury trial

23  agreement that is in writing that is signed by the parties,

24  including Mr. Whitmore, their attorneys.  Let me

25  foundationally ask for the reasons -- and I'll ask the

1   government first -- that the government believes it is in the
2   interest of justice and best serves the purposes of the law
3   that the constitutional right of the government to a trial by
4   jury be given up in this case.

5          MR. CONKLIN:  Your Honor, it's my understanding that
6   Mr. Whitmore is making the decision to enter not only his
7   waiver of right to jury, but the other rights indicated in the
8   pleading based upon his decision that it is a tactical
9   advantage to him to proceed by that method in this court
10  considering charges that are pending against Mr. Whitmore in
11  the Southern District of California, those being State
12  charges, not federal charges.

13         I have been in communication, as Mr. Litman, with the
14  District Attorney in that county, and it's my understanding
15  that they intend to proceed in that case, that any disposition
16  in that case would require a life sentence for Mr. Whitmore.
17  And I have no involvement at all in those negotiations.  But
18  it's my understanding that Mr. Whitmore and his attorney in
19  San Diego are proceeding to waive jury.

20         In this case the statutory maximum sentence for Mr.
21  Whitmore would be 40 years, which the government has reserved
22  its right to request and has notified Mr. Whitmore and his
23  counsel, in fact, we will be requesting and we feel there is
24  clearly sufficient evidence under the guidelines to warrant
25  such a sentence.

1        So the government feels that proceeding in this

2  manner, is, one, one of the most effective ways to preserve

3  that sentence. We also feel -- and I want to be clear that

4  this is as to Mr. Whitmore only -- that given the abuse that

5  occurred in his case, and given the victims that were involved

6  in his case, and what occurred, that it would not be, for

7  purposes of Mr. Whitmore only, in those witness' best interest

8  to come into this courtroom and testify.

9        And therefore considering that and considering the

10  prior damage that has been done to the witnesses, and based

11  upon the government's conversation both with prosecuting

12  authorities in San Diego as well as the custodial parent of

13  those witnesses, it's the government's belief that to cause

14  those witnesses to proceed in this case would, in fact, cause

15  more harm.

16        That being said, should this case proceed to trial,

17  the government is fully prepared to present those witnesses if

18  necessary, though speaking candidly, there probably is a way

19  we could proceed without having to have those witnesses

20  testify.

21        But the mere specter of their testimony, the

22  government is informed, at this point is already reeking

23  havoc, so to speak, with those witnesses.

24        So reaching this disposition at this stage and

25  preventing those witnesses from having to come into court and

1  testify will work great benefit to those witnesses.  And the

2  government feels that that, in the interest of justice, is

3  another reason to enter into this disposition.

4         THE COURT:  What are the present ages of the

5  witnesses?

6         MR. CONKLIN:  I believe the witness is 14 today, or

7  at this time, Your Honor.  At the time of the abuse, the

8  witness was between 9 and 11.

9         THE COURT:  All right.  And there is one witness?

10        MR. CONKLIN:  There is two that are involved, but I'm

11 speaking mainly of the one, who is experiencing the

12 difficulties I previously stated.

13        THE COURT:  What's the age of the other witness?

14        MR. CONKLIN:  I think she -- she hasn't reached

15 majority, Your Honor, I think she's 16.  I don't want to put

16 the defendant's attorney on the spot.  They know who the

17 witnesses are and they know the ages.

18        MR. LITMAN:  Yes.

19        THE COURT:  And are both the witnesses children of

20 Mr. Whitmore?

21        MR. CONKLIN:  Yes.

22        THE COURT:  And therefore he was the custodial parent

23 at the time?

24        MR. CONKLIN:  There was not a divorce, they

25 were -- they were all living in the same household.

1          THE COURT:  In the same household.  All right.

2          MR. CONKLIN:  Oh, I'm sorry.  I misspoke.  I'm wrong.

3   I did -- one -- the one witness is Mr. Whitmore's child, who

4   I've been referring to.  The other witness is not his child.

5   I misspoke.

6          THE COURT:  And this information that you have has

7   been confirmed by a mental health professional?

8          MR. CONKLIN:  It's being confirmed by the mother,

9   Your Honor, who based upon a personal interview with me, tells

10  me that that's what the mental health professional tells her.

11  And the mother has also communicated to me the difficulty the

12  child is experiencing at this time.

13         THE COURT:  And do you have any information to the

14  contrary relative to a mental health professional's

15  recommendation?

16         MR. LITMAN:  No, Your Honor.

17         THE COURT:  All right.

18         MR. LITMAN:  And based on what I know, I believe

19  that's an accurate statement that Mr. Conklin has shared with

20  the Court.

21         THE COURT:  All right.  Does that complete the

22  government's statement?

23         MR. CONKLIN:  Yes, Your Honor.

24         THE COURT:  All right.  If you could, please, Mr.

25  Litman, would you explain to me what either tactical, legal,

1  factual or related reasons you believe justify giving up the

2  right to a jury trial, which is an extraordinary waiver --

3      MR. LITMAN:  Correct.

4      THE COURT: -- and Mr. Whitmore must understand that

5  you would be having the professional judge who hears cases

6  year in and year out and is used to making credibility

7  determinations, and has seen and heard much, much, much more

8  than the average layperson who would be a member of the

9  community and who would be a juror in this case.  And that

10 would be the sole decision maker in your case.  Do you

11 understand that?

12     DEFENDANT WHITMORE:  I do understand that, Your

13 Honor.

14     THE COURT:  All right.  Mr. Litman.

15     MR. LITMAN:  And without being sycophantic, Your

16 Honor, I would -- I would say that that is a positive, from my

17 perspective.  And I share with Mr. Whitmore an approximately a

18 week-long court trial that I had in the Troy Heflin matter

19 with this court and shared with him my perceptions of the

20 Court's fairness and the Court's ability to make impartial

21 decisions based on the facts that were presented.

22     I was the one who suggested to my client that we

23 consider this waiver as a tactic.  I was the one who put

24 together the waiver.  I felt and I still feel that it's in Mr.

25 Whitmore's best interest, given the alternatives available to

1   him.

2          I've seen all the evidence.  And based on everything

3   that I know, I believe that it is in Mr. Whitmore's best

4   interest to proceed under the waiver that we have submitted to

5   the Court even with the various waivers contained therein.

6   And --

7          MR. CONKLIN:  I'm sorry, Mr. Litman.  I apologize for

8   interrupting and there's something else that I'd like.  I'd

9   like to submit the government's proposed exhibits for Mr.

10  Whitmore for the Court's consideration in considering the

11  government's prior statement with the witness and the effect

12  of the witness' testimony.  Mr. Litman is aware of these.

13  This is just for the purpose of this hearing.

14         THE COURT:  Yes.  There is reference to the exhibits

15  in the in limine motions, but I, of course, have not seen any

16  of the exhibits.

17         MR. CONKLIN:  And this is just for the purpose of

18  this hearing only.

19         MR. LITMAN:  Correct.

20         THE COURT:  What we would do is -- because I believe

21  that even more factual detail would be appropriate to justify

22  this.  And my intention would be to make a sealed copy for an

23  appellate court, in the event that ever eventuated, of, quite

24  frankly, the evidence upon which the decision is made so that

25  that will be clear to any reviewing court what factored into

1   the defense's mind and into the Court's mind in evaluating

2   what the potential effect of that evidence is on a jury as

3   opposed to a judge.

4           MR. CONKLIN:   That would be the government's request

5   as well, Your Honor.

6           MR. LITMAN:   And if Mr. Conklin and I could approach,

7   Your Honor.

8           THE COURT:   Yes, you may.   We're at sidebar and the

9   exhibits are being presented.

10          (There was a discussion between the Court and counsel

11              at sidebar, not reported.)

12          THE COURT:   All right.   The Court has reviewed at

13  sidebar the exhibits and the graphic detail of young females

14  with Mr. Whitmore, who is clearly identifiable in some of the

15  photographs, are certainly of a quality and nature that depict

16  what is alleged in the indictment and have the potential to be

17  prejudicial.

18          It is, of course, the Court's observation that the

19  nature of the offenses, by the elements of the crimes, are

20  prejudicial and that is not to be avoided.   In other words,

21  the fact that something may be unimaginable or that may be so

22  far beyond the mores, the morality or acceptable behavior in a

23  civilized society does not mean that the evidence can't be

24  presented when it's required to prove that a crime has

25  occurred.

And so I will find that, based on the strategic and tactical reason that Mr. Litman has stated, that there is very substantial reason not to exhibit such depictions either in video form, on moving video or in still picture form, for all the reasons that have been stated. And that certainly justifies the decision that is being offered.

I do believe that we should have a representative sample copied and put in an envelope. We'll make it Court Exhibit 1 to be sealed as part of the transcript of this proceeding. I'm not going to seal the transcript of this proceeding, because I don't think there's anything that is confidential about it. But there is, for the purposes of sealing, a great, a huge public interest in preserving the confidentiality of the identity of the victim and any other persons who are depicted in the photographs. There is no reason to make public those images or their identities for any reason or purpose.

And the Court believes that if the parties agree, by way of stipulation, and again that's independently up to you, that I would order that exhibit sealed, but I want it to be part of the record that explains the basis for the strategic decision in deciding to waive jury.

Is the government willing to stipulate that those representative photos from the exhibit binder be sealed?

MR. CONKLIN: Yes, Your Honor. And so the Court is

1   aware, the hearing procedure next week, the government

2   anticipates submitting the same as well as additional exhibits

3   for the purposes of the guilt phase of the trial.

4           MR. LITMAN:  On behalf of Mr. Whitmore, I would so

5   stipulate, Your Honor.

6           THE COURT:  All right.  Then we'll ask that that be

7   marked Court Exhibit 1 and I'm going to request that the court

8   reporter prepare a transcript of this proceeding and that the

9   courtroom deputy see that in the Court file, that there be the

10  sealed exhibit, which is the photos, Court Exhibit Number 1.

11          (Court Exhibit 1 was received.)

12          MR. CONKLIN:  Your Honor, could I have the Court's

13  permission to make a copy of this and return a duplicate to

14  the Court?  This is my only set.

15          THE COURT:  Yes, of course.

16          MR. CONKLIN:  Thank you, Your Honor.

17          THE COURT:  All right.  You may continue, Mr. Litman.

18          MR. LITMAN:  Thank you.  Your Honor, one other factor

19  that I feel is significant is I have been in communication

20  with the Gary Roberts who's Mr. Whitmore's attorney in the

21  pending state case, which we referenced in the waiver.  And I

22  have spoken with him on multiple occasions.  He's provided me

23  copies of the discovery that he received from the District

24  Attorney's office.  We've obtained a copy of the preliminary

25  examination in that case.  And I have a copy of the accusatory

1    pleading in that case.

2         So I'm also familiar with that case.  And I believe

3    that this waiver is in Mr. Whitmore's best interest in light

4    of this case, but also significantly in light of his pending

5    trial on State criminal charges in San Diego County Superior

6    Court.

7         THE COURT:  Would that in part be because in this

8    case there would be recorded testimony, exhibits introduced

9    into evidence and other matters that could be established of

10   an evidentiary nature that could then be used in the State

11   proceeding?

12        MR. LITMAN:  That is -- yes, that is one factor.

13   Yes, Your Honor.  And that factor, as far as evidence from

14   this case that could be very damaging to Mr. Whitmore, is also

15   a reason why we couldn't enter a plea and give a factual basis

16   required by Rule 11.  Because --

17        THE COURT:  And so that we have a complete

18   understanding and so that Mr. Whitmore understands, is the

19   government making any representation of promise about the

20   sharing of information from the federal case with the State

21   authorities?

22        MR. CONKLIN:  No.  In other words, there's been no

23   agreement that we would not share.

24        THE COURT:  Would or would not.

25        MR. CONKLIN:  Right.

1          THE COURT:  And I --

2          MR. CONKLIN:  I'm sorry.  I will indicate to the

3    Court, as defense is aware, that San Diego authorities have

4    the evidence that's previously been displayed in court.

5          THE COURT:  So your anticipation is that you don't

6    have anything that they need that is different or that is

7    unique to this case that they don't have or would otherwise

8    not have access to?

9          MR. CONKLIN:  Or otherwise not have access to,

10   because they will be using the same evidence we will be using,

11   the great majority of which came from the investigation in

12   Clovis.

13         THE COURT:  All right.  Mr. Whitmore, did you hear

14   all that?

15         DEFENDANT WHITMORE:  Yes, I did.

16         THE COURT:  And you understand that the government is

17   not agreeing not to share whatever evidence or information it

18   has that has been the product of the investigative activity in

19   this federal case in the Eastern District of California and,

20   although it sounds like the prosecutor in San Diego County has

21   all the information that the government has in this case, it

22   is possible that they would ask the United States Attorney in

23   this district, the Eastern District of California, to provide

24   or to share information that they have and they are not

25   agreeing not to do that.  They're free to do that if they

1   believe that's in the best interest of the public.

2           DEFENDANT WHITMORE:  I understand that, Your Honor.

3           THE COURT:  You understand that --

4           DEFENDANT WHITMORE:  Yes, sir.

5           THE COURT:  -- completely?

6           And do you still believe it's in your best interest

7   to proceed knowing that that evidence could potentially be

8   provided from this case to the San Diego case?

9           DEFENDANT WHITMORE:  Yes, Your Honor.

10          THE COURT:  All right.  And that's your understanding

11  as well, Mr. Litman?

12          MR. LITMAN:  Yes, Your Honor.

13          THE COURT:  And you've given the advice to Mr.

14  Whitmore based on knowing of the risk that evidence and

15  information in this case could be provided by the United

16  States Attorney in the Eastern District of California to the

17  San Diego County authorities?

18          MR. LITMAN:  Yes, Your Honor.

19          THE COURT:  For the parallel state case.

20          MR. LITMAN:  Yes.  That's correct.  We're aware and

21  Mr. Whitmore is aware that Mr. Conklin has conferred on

22  multiple occasions with Jeff Dort, who's the Deputy District

23  Attorney.  Mr. Whitmore is aware that Mr. Conklin has gone to

24  San Diego and examined physical evidence and brought some of

25  that evidence back here to Fresno for use at trial against Mr.

1 | Whitmore.

2 | THE COURT: All right. Do you wish to make any

3 | further statement concerning the bases, B-A-S-E-S, for the

4 | waiver of right to jury trial?

5 | MR. LITMAN: Your Honor, the decision that Mr.

6 | Whitmore has made and my recommendation also factors in the

7 | applicable guidelines, the statutory maximum, Mr. Whitmore's

8 | age, which is 45, and also the sentence that he is facing if

9 | convicted on even a significant number of the charges in San

10 | Diego. And we've discussed all that and those are all factors

11 | in addition to the other information I've shared with the

12 | Court.

13 | THE COURT: All right. Mr. Whitmore, you've heard

14 | your attorney's statement. Do you understand what he just

15 | said?

16 | DEFENDANT WHITMORE: Yes, Your Honor.

17 | THE COURT: And do you agree with it?

18 | DEFENDANT WHITMORE: Yes, I do, Your Honor.

19 | THE COURT: All right. As I understand the waiver,

20 | in this trial, if the trial is to be without a jury, there are

21 | two charges that would proceed for decision by the Court after

22 | the submission of evidence. And those are the two charges

23 | that are presently in the indictment. And I'd like you to

24 | state each of those charges for the record, Mr. Conklin.

25 | MR. CONKLIN: Thank you, Your Honor. The first

1   charge is a violation of Title 18 United States Code, Section

2   2251(a) and (d) as in David, conspiracy to sexually exploit

3   children.  That's as alleged in Count One.

4           As alleged in Count Two, the violation is of Title 18

5   United States Code, Section 2251(b) as in boy, which is

6   entitled sexual exploitation of children but requires as an

7   additional and different element that the defendant be a

8   parent or person having custody and control of the minor child

9   who was permitted to engage in the conduct.

10          THE COURT:  And those charges, Mr. Whitmore, have

11  been fully explained to you?

12          DEFENDANT WHITMORE:  Yes, Your Honor.

13          THE COURT:  And based on discussions with your

14  attorney, you believe you understand the elements of the

15  charges?

16          DEFENDANT WHITMORE:  Yes, I do, Your Honor.

17          THE COURT:  And what would occur is that such

18  evidence as the government presents would be received by the

19  Court.  You will have the opportunity to present evidence, Mr.

20  Litman?

21          MR. LITMAN:  Yes, Your Honor.

22          THE COURT:  All right.  And the same opportunity as

23  in any trial is available to you to present evidence.  And

24  then after the submission of all the evidence, counsel would

25  have the right to present oral arguments to the Court, to

1   submit written argument and legal authorities to the Court

2   whereupon the case is submitted for a decision.  And then the

3   case would be decided by a judge alone without any jury and

4   all decisions regarding the matter of guilt or innocence,

5   meaning not guilty, of each charge would be decided only by

6   the judge.  Do you understand all that?

7           DEFENDANT WHITMORE:  I understand that, Your Honor.

8           THE COURT:  All right.  Mr. Litman, do you have

9   anything further that you wish to state in support of the

10   reasons you have determined it is in the best interest of Mr.

11   Whitmore to waive his right to jury trial?

12          MR. LITMAN:  No.  I think we've given the Court the

13   reasons.

14          THE COURT:  All right.  Relative to the government's

15   position, Mr. Conklin, there is, of course, the concern that

16   in any case where the right to jury trial exists, that the

17   constitutional -- constitution guarantees the availability,

18   because of its fairness, of having members of the community

19   make the decisions in the case.

20          Do you see that you will be either losing or gaining

21   anything by not having a jury?

22          MR. CONKLIN:  No.  As to Mr. Whitmore standing alone

23   Your Honor, no.  Given the nature of the evidence we have

24   previously stated, we feel that that interest -- though we

25   agree with the Court the interest in the public being able to

1   decide charges is substantial, we further are concerned and

2   would submit to the Court that the interest of the minor

3   victim in this case outweighs those interests.  For Mr.

4   Whitmore standing alone.

5           THE COURT:  All right.  The Court, having observed

6   the evidence that would be presented, finds that because of

7   the extent, the apparent duration and the nature, because I'm

8   going to be a trier of fact and law in the case, a trier of

9   law in any event if there were a jury here, I don't want to

10  precharacterize it in a way that would be indicative of any

11  prejudgment.

12          But certainly I think it would be a fair statement

13  that could be made objectively by any person, whether that

14  person is a judge, a prospective juror or a lawyer in the case

15  on either side, that what is depicted in the photographs, if

16  that was experienced by a female person of the age range of

17  nine to 11 years is such that it could only have a devastating

18  and an indelible effect, as we understand the basic tenets of

19  psychology without trying to be an expert in that, but all

20  that we know about the subject of child abuse, because sexual

21  exploitation of minors is child abuse.

22          And I believe that there is, based on statements of

23  the government attorney, based on the statements -- although

24  it's hearsay, it hasn't been objected to -- of the spouse.

25  And I recognize that the spouse may have antagonism and other

1   interests that are adverse to Mr. Whitmore's in many respects,

2   and that she would have reasons to want her daughter not to

3   participate in a trial, but could be prejudicial to Mr.

4   Whitmore.

5          And so recognizing all of that, the Court believes

6   that within the common understanding of medical science and

7   the human condition, that there are strong reasons to support

8   the government's position that not calling this young woman in

9   a public courtroom to have to testify and to go through the

10  experience of reliving what is depicted in the photographs is

11  so compelling, really overwhelmingly so, that that is a unique

12  factor that justifies not having a jury of Mr. Whitmore's

13  peers and having the community in effect make the decision on

14  the questions of guilt or innocence because, all things being

15  equal, the protection of the mental health, the interests in

16  her mental rehabilitation and recovery are so strong.

17         And if Mr. Whitmore also is willing for those things

18  to occur and will give up his right of cross-examination and

19  confrontation and his right to put her through that ordeal, it

20  seems to me that although that in one respect is detrimental

21  to him, in a tactical sense it is also beneficial to him as a

22  parent and as a human being to see that the young woman not be

23  subjected to any further type of involvement or even, if you

24  will, direct knowledge of these proceedings or what is

25  occurring except as her legal guardian and any mental health

1  advisors that she has may wish to impart to her.

2  So for all of those reasons, I'm going to find,
3  because of the nature of the charges, the nature of the
4  evidence that would be presented as to Mr. Whitmore only, the
5  victim's rights and the paramount interest of protecting the
6  victim in as many ways as possible, but essentially by not
7  bringing her to the witness stand to relive these events and
8  in aid of her recovery and her future mental health, the Court
9  finds in this case only, limited to Mr. Whitmore, that the
10  interest of justice favor, and the constitutional rights,
11  considering the waiver of jury trial that has been proposed
12  and provide a justifiable basis to do that.

13  At this point I'm going to ask that Mr. Whitmore join
14  us by coming to the podium and that he take an oath and then
15  we will examine now whether or not these are knowing,
16  voluntary and informed waivers.

17  (Defendant sworn.)

18  THE COURT:  Mr. Whitmore, do you now understand that
19  having taken an oath, if you answer any inquiry I make with a
20  false answer, that that could subject you to a separate
21  prosecution for perjury?

22  DEFENDANT WHITMORE:  I understand that.

23  THE COURT:  All right.  I have in my mind a waiver of
24  jury trial.  It is a written document that is five pages in
25  length and it bears the letterhead of your attorney, Mr.

1   Litman, and your attorney Mr. Litman has just represented to
2   the Court that he has actually prepared this.  He's
3   negotiated, of course, with the other side.  He is a party to
4   it.  But he is the scrivener, meaning the writer of it, and he
5   has included in it the provisions that he believes would be in
6   your interest in this case relative to giving up the right to
7   jury trial.
8            Have you read this agreement?
9            DEFENDANT WHITMORE:  I have.
10           THE COURT:  Have you fully discussed it with Mr.
11   Litman?
12           DEFENDANT WHITMORE:  I have.
13           THE COURT:  Do you have any remaining questions about
14   it?
15           DEFENDANT WHITMORE:  None whatsoever.
16           THE COURT:  Do you feel that -- if you would look at
17   page five, line four.  Is that your signature?
18           DEFENDANT WHITMORE:  That is my signature.
19           THE COURT:  And do you feel that by the time that you
20   put your signature on this document, that you fully understood
21   it?
22           DEFENDANT WHITMORE:  Yes, Your Honor.
23           THE COURT:  And you'd been able to ask all the
24   questions you had about it and received answers that you
25   understood and were satisfied with from Mr. Litman?

1    DEFENDANT WHITMORE:  Yes.

2    THE COURT:  All right.  I am now going to go through
3    the waiver with you, because I want to be sure that you fully
4    understand it and I want to be sure that you fully appreciate
5    the consequences of what you're giving up in terms of your
6    rights here and what will happen next week when we proceed to
7    trial in the case.

8    The first provision is that you know and that you
9    understand what the agreement means and that you do this of
10   your own free will.  The word is voluntary.  But that means
11   because you truly believe that it is in your best interest.
12   Do you understand what I've just said?

13   DEFENDANT WHITMORE:  Yes, Your Honor.  In fact, if
14   Mr. Litman did not suggest the trial without jury, I would
15   have mentioned it to him.

16   THE COURT:  All right.  Thank you.  Do you understand
17   that there is no requirement that you do this, that you have
18   an absolute right to have a jury trial and that no one can
19   take that from you?

20   DEFENDANT WHITMORE:  I understand that.

21   THE COURT:  And do you believe, for all the reasons
22   that have been discussed on the record here in your presence,
23   that those reasons justify and make prudent on your behalf not
24   having a jury in this case?

25   DEFENDANT WHITMORE:  Yes, I do.

1        THE COURT: Has anybody put any kind of pressure on

2  you on the subject of waiving a jury trial and entering into

3  this agreement?

4        DEFENDANT WHITMORE: No one has.

5        THE COURT: Has anybody threatened you in any way?

6        DEFENDANT WHITMORE: No, sir.

7        THE COURT: Has anybody even implied to you that

8  there would be adverse consequences if you didn't enter into

9  this waiver?

10        DEFENDANT WHITMORE: No, sir.

11        THE COURT: Has, to the contrary, it been suggested

12  to you, in discussions with your attorney, that this would be

13  to your advantage?

14        DEFENDANT WHITMORE: It has, Your Honor.

15        THE COURT: The waiver. And based on your

16  understanding and your own views, do you now believe that this

17  would either be to your advantage or your disadvantage,

18  waiving the jury?

19        DEFENDANT WHITMORE: I believe it would be to my

20  advantage.

21        THE COURT: You should understand that the right to

22  jury trial means that we would -- and we have a large number

23  of people. We don't even know who they are. We haven't seen

24  them. We haven't heard of them. We probably won't know any

25  of them. They'll come in here from the eleven counties that

1  stretch from as far north as Tuolumne County, Solano, all the
2  way down to the Los Angeles County line, to the Nevada border,
3  to the coast range.

4      We'll have people from all over that area who will
5  come here and we will then question them. We'll question them
6  very carefully and we'll question them in depth about their
7  feelings about these kinds of offenses, what their personal
8  experiences in life have been and whether they've been abused
9  or whether they have family members that have been abused.

10      And we would do everything in our power to ensure
11  that each individual juror who's selected is a fair-minded and
12  an open-minded person who could hear this kind of a case
13  recognizing the unique facets and the unique elements of these
14  crimes and the nature of these crimes, who could hear it with
15  an open mind. You understand all that?

16      DEFENDANT WHITMORE: I understand that, Your Honor.

17      THE COURT: Ultimately we would select twelve jurors
18  who would be our regular jury and we would have -- I believe
19  we had agreed in this case we were going to have alternates.

20      MR. CONKLIN: Yes, Your Honor.

21      MR. LITMAN: I'm sure we would.

22      THE COURT: We were going to have at least three or
23  four.

24      MR. LITMAN: Yes, Your Honor.

25      THE COURT: Those persons would also be selected by

1   the same process.  They would sit and hear all the evidence,

2   but they wouldn't deliberate.  But they would be here in the

3   event that one of the other jurors became disabled and had to

4   leave.  We would then seat them and the deliberations would

5   begin anew with the alternates.  But they'd go through the

6   same intensive and in depth screening process where you're

7   just about, within the limits of the law, entitled to ask any

8   prospective juror anything that could bear on the fairness and

9   the ability of that person to be impartial.  You understand

10  all that?

11          DEFENDANT WHITMORE:  I do understand that.

12          THE COURT:  The jury of twelve persons, then, would

13  be the deliberative body after hearing all the evidence, after

14  hearing instructions of law, after hearing the arguments of

15  all the attorneys in the case, expressing their views about

16  what the evidence did or did not establish, after all of that

17  I would give instructions of law to the jury that would govern

18  their deliberations.  They would go to the jury room and they

19  would exchange their views and express their opinions to each

20  other and then vote their consciences on each of the two

21  crimes.

22          Each element has to be established beyond a

23  reasonable doubt.  That's the standard that I would define for

24  the jury.  It's the highest standard of proof that's

25  recognized in the law in any kind of case.  And only after all

1   twelve jurors unanimously agree on every element, on each of
2   the crimes, could there be a verdict.

3          Otherwise, if they don't all agree, there would be a
4   mistrial on that crime and it would have to be tried over
5   again.  Or if they couldn't agree on one of the elements,
6   you'd be found not guilty of that crime.  Do you understand
7   all that?

8          DEFENDANT WHITMORE:  I do understand that.

9          THE COURT:  In the case the jury is not present,
10  under the waiver that you are proposing, only the judge will
11  be the decision maker.  The judge will decide who to believe
12  and who not to believe, what facts to accept or not accept,
13  how much weight to give any evidence in the case, whether it's
14  testimony, whether it's an exhibit or whether it is a
15  stipulation that the parties agree as to a fact.  And then
16  apply the law.

17         And the judge would be both interpreting, applying
18  and deciding the legal ramification and weight to reach the
19  questions of guilt or innocence under the same standard of
20  proof beyond a reasonable doubt.  But that's done without the
21  jury acting as the judges of the evidence.

22         In that case, the judge is the only judge of the
23  evidence and the facts to determine whether they've been
24  established or not.  And the judge is the only arbiter of the
25  law in applying those facts to the law, as the judge knows it,

1   to reach the decision in the case.  Do you understand all
2   that?

3         DEFENDANT WHITMORE:  I understand.

4         THE COURT:  And is that your preference, that you
5   wish to have one decision maker, only the judge, not the
6   twelve members of the community, the jury?

7         DEFENDANT WHITMORE:  It is, Your Honor.

8         THE COURT:  Let me now go into some detail that is in
9   the agreement itself.  In the jury selection process, we
10  haven't decided how many because there were motions to
11  increase if there were going to be a jury trial, the number of
12  peremptory challenges.

13        But a peremptory challenge is an ability to excuse
14  any person who sits as a prospective juror, to basically say
15  thank you, we don't want you to serve on this case and you
16  don't have to give a reason for that.  It's done silently on a
17  strike system where the strike sheet goes back and forth.
18  They don't even know who's challenged them, they don't know
19  why they've been challenged, but they are challenged and
20  they're gone.

21        You can't excuse someone, though, because of their
22  gender or because of their race or because of some other
23  protected quality that that person has that the law doesn't
24  permit discrimination for.  But beyond that, as long as it was
25  not a discriminatory challenge, you never have to give a

1   reason for a challenge and you can, unless it's on race or

2   gender, what is called a *Batson* type objection.  And a *Batson*

3   is a name of a Supreme Court decision that entitles both sides

4   of a jury trial to a fair and impartial jury.

5         But otherwise, the peremptory challenges enable you

6   to excuse persons for any reason, if you just don't like the

7   looks of a person or you don't like the tone of voice or you

8   think that person, because of their history or their life

9   experience, would not be favorable to listening to your

10  evidence, they can be excused.

11        You also have the ability to challenge any person for

12  cause that the law states, such as they're related to

13  somebody, they are an employee or an employer, that they have

14  a financial interest in someone who's associated with the case

15  or there are many other grounds that are statutory grounds for

16  cause.

17        And those are either identified by the Court without

18  the help of the lawyers or the lawyers bring that to the

19  Court's attention and exercise what's called a challenge for

20  cause.  And the Court would be then ruling on, and if a

21  challenge for cause is found to exist, that juror would be

22  excused because the law says the juror can't serve.

23        Do you understand how the jury selection would

24  proceed?

25             DEFENDANT WHITMORE:  Yes, Your Honor.

1    THE COURT:  The -- I've already told you about the
2  unanimous verdict, that all twelve jurors have to unanimously
3  agree and that that would be under the reasonable doubt
4  standard.  And the agreement that we are talking about here,
5  you are agreeing, is to be filed with the Court and become
6  part of the permanent record of your case.  Do you understand
7  all that I've just said?

8    DEFENDANT WHITMORE:  Yes, Your Honor.

9    THE COURT:  And do you agree with it?

10    DEFENDANT WHITMORE:  Yes, Your Honor.

11    THE COURT:  You are agreeing specifically that you
12  will give up your right to make evidentiary objections,
13  substantive and procedural, such as hearsay, lack of
14  foundation, improper opinion.

15    And what that means is it's going to be much, much
16  easier for the government to prove its case against you
17  because in effect you're foregoing your right to make legal
18  challenges to the evidence.  You understand that?

19    DEFENDANT WHITMORE:  I understand that, Your Honor.

20    THE COURT:  And I want you to understand that's very
21  unusual.  I will tell you, I have been either a lawyer, a law
22  professor or a judge for approaching 35 years and I have never
23  seen it done in a case that is going to go to trial.  This is
24  the first time I've ever experienced it.  And I've never even
25  seen a case written about where it's been done.  It's that

1   unusual.  And you're agreeing to that.  Do you understand
2   that?

3          DEFENDANT WHITMORE:  I do understand that.

4          THE COURT:  And you're doing it with full knowledge
5   of the consequence that the government might not be able to
6   find a foundational witness.  They might not be able to link
7   up a computer connection or they might not be able to bring in
8   someone with an appropriate opinion that would be needed and
9   that would be something that you could assert and, in fact,
10  you had been asserting such objections and Mr. Boobar is
11  making all kinds of objections based on all kinds of issues.
12  You are withdrawing and giving up the right to do that.

13         DEFENDANT WHITMORE:  During the trial as I understand
14  it.

15         THE COURT:  During the trial, that is correct.

16         DEFENDANT WHITMORE:  I understand.

17         THE COURT:  But that's where your guilt or innocence
18  of these charges is going to be determined.

19         DEFENDANT WHITMORE:  Yes, Your Honor.

20         THE COURT:  And I want you to fully and completely
21  understand that.  Do you?

22         DEFENDANT WHITMORE:  I do understand.

23         THE COURT:  And is that what you want to do?

24         DEFENDANT WHITMORE:  That is what I want to do.

25         THE COURT:  Also the agreement provides that you're

1  going to give up the right to cross-examine the witnesses.

2  And let me tell you what cross-examination is.  That's the

3  right to question each person who's on the witness stand after

4  the government lawyer questions the witness first.

5  　　　　And I will tell you this, what our Supreme Court has

6  said about the right of cross-examination.  Justices of the

7  Supreme Court have said that it is the most powerful engine to

8  determine the truth that exists.  And you are going to give

9  that up according to this agreement, to not have the right to

10  test their memory, to test their believability, to test the

11  accuracy, to test the bias, to test the interest.  All -- to

12  test inconsistencies in what they said now and may have said

13  before, as to all the witnesses, you're essentially disabling

14  that engine and taking all of its power away and rendering it

15  in effect without -- without any power or purpose.  Do you

16  understand that?

17  　　　　DEFENDANT WHITMORE:  I understand that.

18  　　　　THE COURT:  And is that what you want to do?

19  　　　　DEFENDANT WHITMORE:  That is what I want to do.

20  　　　　THE COURT:  You are also giving up your right to have

21  the decision that is made by the judge in this case, under the

22  constitution or any other law, to appeal your conviction.  And

23  you're giving up of the right to seek other court review is

24  not only given from this court to a higher court called direct

25  appeal, but you're giving up the right to attack this case and

1    the result of the trial on the questions of guilt or innocence

2    in another proceeding called a collateral proceeding like

3    habeas corpus in this court, in a trial court, or in another

4    trial court, in another case, like the state case that is

5    still pending against you in San Diego County.

6            And I'm going to keep your sentence separate from

7    this.  But as to the questions of guilt and innocence and

8    whether these crimes have been committed, you are giving up

9    all rights to have that in any way reviewed by another court.

10   Do you understand that?

11           DEFENDANT WHITMORE:  I do, Your Honor.

12           THE COURT:  And do you agree with it?

13           DEFENDANT WHITMORE:  I do, Your Honor.

14           THE COURT:  Is that what you want to do?

15           DEFENDANT WHITMORE:  That's what I want to do.

16           THE COURT:  You are reserving your right to appeal

17   your sentence and not the elements of the crimes and whether

18   you're guilty of the crimes, but all the factors under the

19   sentencing guidelines that go into determining what the

20   offense level is, what the offense characteristics are, what

21   your criminal history is, and in applying the guidelines.

22           You're reserving the right to appeal or collaterally

23   attack any sentence that is pronounced in this case.  Do you

24   understand that?

25           DEFENDANT WHITMORE:  I understand that.

1            THE COURT:  Is that what you want to do?

2            DEFENDANT WHITMORE:  That's what I want.

3            THE COURT:  The government agrees and understands

4    that only prosecution, plea and conviction, rights to review

5    and appeal are being given up, that Mr. Whitmore reserves his

6    right to appeal or seek review of his sentence.  Mr. Conklin?

7            MR. CONKLIN:  Yes, Your Honor.

8            THE COURT:  And that's agreeable to the government?

9            MR. CONKLIN:  Yes, it is, Your Honor.

10            THE COURT:  You've also given up the right, which is

11   one that you have in a bench trial, to have the Court make

12   written findings of fact and conclusions of law.  What that

13   means is that you don't get that right with the jury, but when

14   you have a judge try a case, you can require the judge to give

15   you a statement of decision where the judge specifies every

16   fact that is used and every principle of law that is applied

17   in reaching the decision on the question of guilt or innocence

18   on each of the two crimes.  And then you'd be able to see it

19   in black and white, every reason that is given.

20            When a jury comes back, they say guilty or not

21   guilty, you can't question them about that.  All you can ask

22   them is if it is their true verdict and that's the end of it.

23   You can't know what's in their mind or why they thought it or

24   why they did it.

25            But the judge does just the opposite.  The judge will

1   tell you every fact that's established and every law that was

2   applied and the meaning of the law.  You're giving up the

3   right to have the Court do that in this case.  Do you

4   understand?

5           DEFENDANT WHITMORE:  I do understand.

6           THE COURT:  Is that what you want to do?

7           DEFENDANT WHITMORE:  That's what I want to do.

8           THE COURT:  And the government agrees with that, to

9   waive the statement of decision and any findings of fact and

10  conclusions of law on the issues of guilt or innocence?

11          MR. CONKLIN:  Yes.  Considering the fact that this

12  court will be the fact finder and will hear the evidence, we

13  do waive -- give up that right.

14          THE COURT:  Now, in return for these very substantial

15  giving up the rights that we've just gone through, you are

16  getting from the government in return a promise that they will

17  recommend that this case run concurrently with the case in San

18  Diego if there is a sentence in that case, if you are

19  convicted.

20          Now, I don't understand this to be an 11(e) plea, and

21  so I must tell you that the government is going to make that

22  recommendation.  Is that correct?  Or concurrent sentences.

23          MR. CONKLIN:  That's correct.

24          THE COURT:  But there's no binding effect on the

25  Court.  And so you should understand that it is possible that

1   the judge in the case would say no, they'll be consecutive,

2   meaning the two sentences will be stacked one on top of the

3   other and nobody can promise you to the contrary.  Do you

4   understand that?

5              DEFENDANT WHITMORE:  I understand that.

6              THE COURT:  And are you still willing, knowing that

7   even if the government recommends it, the judge doesn't have

8   to do it.  There's no obligation and you're exposed up to the

9   maximum punishment provided by law, you're still willing to do

10  that?

11             DEFENDANT WHITMORE:  Yes, I am.

12             MR. CONKLIN:  And if I could indicate I believe the

13  agreement states it, Your Honor, but I have contacted the

14  authorities in San Diego and they have made it clear and we

15  have made it clear that none of this agreement is binding upon

16  San Diego and they can proceed in any way that they feel fit

17  and they're not bound by --

18             THE COURT:  I hadn't gotten there yet, but that is

19  clearly what the agreement says.  It says that you understand,

20  Mr. Whitmore, that the government in no way binds any other

21  authorities, including San Diego County and their District

22  Attorney's Office, concerning what sentence may be imposed in

23  any other prosecution against you.

24             DEFENDANT WHITMORE:  Uh-huh.

25             THE COURT:  Do you understand that?

1    DEFENDANT WHITMORE:  I understand that.

2    THE COURT:  And do you agree?

3    DEFENDANT WHITMORE:  I agree.

4    THE COURT:  The government further agrees -- and let

5  me just say that the case that we're specifically talking

6  about is Superior Court of California, County of San Diego,

7  People versus Whitmore, Number SCD165314.

8    The government will also recommend and request of the

9  court that you be permitted to serve any federal sentence in a

10  federal facility in custody before any State sentence.  And

11  what I can tell you is this.  There's no 100 percent assurance

12  that can be given to you.  It is likely if that case isn't

13  even -- I don't know if there's a trial date in that case or

14  not.

15    MR. CONKLIN:  October, this year, Your Honor.

16    THE COURT:  If this case doesn't get tried until

17  October, the chances are that if you are convicted in this

18  case -- I'm not saying that you're going to be, but if you

19  are, you would probably, although I can't promise it, be in a

20  federal facility by the time if you were convicted in a state

21  case, if that eventuated.  And so ordinarily, but again,

22  nobody can promise you this, the State court can't writ you

23  out of a federal custodial institution if you're there.

24    The chances are if you've started serving your

25  federal sentence, although you might be writted out for issues

1   in the State proceeding or for other matters, your federal

2   sentence would be served before your State sentence, but still

3   no firm promise can be made even by the judge.  Do you

4   understand all of that?

5           DEFENDANT WHITMORE:  I understand.

6           THE COURT:  And do you agree?

7           DEFENDANT WHITMORE:  I agree.

8           THE COURT:  The government is going to make a request

9   for the maximum statutory sentence in this case, which the

10  government believes is 40 years, 20 years on each count.  And

11  that if, for some reason, the statutory maximum does not

12  calculate to that period of time, the government would move

13  for an upward departure.  There are no promises that that

14  would be granted or denied, but that's the government's stated

15  intention about what it seeks with regard to the length of the

16  sentence in this case.  Do you understand that?

17          MR. LITMAN:  I'm sorry, Your Honor.

18          THE COURT:  Yes.

19          MR. LITMAN:  Did the Court say above the guide lines

20  or above the statutory max?  I think you might have said above

21  the statutory -- maybe I heard it wrong.

22          THE COURT:  No.  The -- what I intended to say was

23  that to the extent the statutory maximum requires the

24  government to request an upward departure, the government

25  intends to file such motion.

1          MR. LITMAN:  Right.  Right.

2          THE COURT:  That's in the agreement.

3          MR. LITMAN:  Correct.

4          MR. CONKLIN:  That's correct.  And we not only intend

5    to, we will.  Though I will state it's the government's

6    calculation of the guidelines that the guidelines allow for

7    the sentence, the 40-year sentence.  But if they don't, we

8    will be filing the upward departure memo.  And the issues, in

9    candor, and Mr. Whitmore's aware of this, the government feels

10   that based upon the experience the prosecution has, that such

11   sentence -- well, is well supported by the facts of this case.

12         THE COURT:  All right.  Meaning that there would be

13   an upward departure motion to go beyond what the maximum in

14   the guidelines are.  Do you understand that?

15         DEFENDANT WHITMORE:  I understand.

16         THE COURT:  And do you agree?

17         DEFENDANT WHITMORE:  I agree.

18         THE COURT:  And if we could, let's have a statement

19   of the maximum punishment that you face in all respects.

20         MR. CONKLIN:  It's 20 years per count, Your Honor.

21   Each count carries a mandatory minimum of ten years and a

22   statutory maximum of 20 years.  And again, based upon the

23   conduct in this case, the government feels they would run

24   consecutive.

25         THE COURT:  All right.

1        MR. CONKLIN:  For a total of 40 years.

2        THE COURT:  There will a mandatory penalty assessment

3    of $100 each for each crime.  There will be a minimum five

4    year supervised release term.

5        MR. CONKLIN:  Yes.

6        THE COURT:  To a maximum of --

7        MR. CONKLIN:  I think it's ten, Your Honor, but I'm

8    not positive.

9        THE COURT:  I'm thinking it's ten from the other

10   agreements that we've done in this case.  But we should be

11   certain of that.  Do you remember, Mr. Litman?

12       MR. LITMAN:  No, Your Honor, I don't.

13       THE COURT:  All right.  Well then let's look at the

14   code.  Because we want for Mr. Whitmore to be fully advised.

15   But what supervised release means is those are a series of

16   conditions that you would be subject to upon your release from

17   custody.  And if you were to violate any one of those

18   conditions, you could be returned to custody for the period of

19   supervised release actually imposed or up to -- and I believe

20   it's the five years, whichever is less.  And perhaps you

21   can --

22       MR. CONKLIN:  Your Honor, I have the plea agreement

23   for co-defendant Mr. Emmerson who pled guilty to the same

24   charges, Count One and Count Two, and the Court informed Mr.

25   Emmerson at that point as for each count, Count One and Count

1    Two, should the defendant violate any terms of his supervised

2    release, he could be returned to prison for the remaining

3    period of the period of supervised release actually imposed by

4    the Court or three years, whichever is less, up to five years

5    per count.

6              THE COURT:  All right.  It's up to five years.

7    That's the maximum.  And three years or the actual term

8    imposed, whichever is less in the event of a violation.  Do

9    you understand all the maximum punishment you face in the

10   case?

11             DEFENDANT WHITMORE:  Yes, I do.

12             THE COURT:  And I'm confident that you would be

13   required to register.  Is there a registration requirement?

14             MR. CONKLIN:  Yes.  Under California Penal Code

15   Section 290, it's my experience that there is.

16             THE COURT:  Yes.  Do you understand that?

17             DEFENDANT WHITMORE:  I understand.

18             THE COURT:  And you agree?

19             DEFENDANT WHITMORE:  I agree.

20             THE COURT:  The government is not making any promises

21   to you about what the amount of any fine in the case would be,

22   what your base offense level will be, whether specific offense

23   characteristics apply to your conduct, whether you have any

24   criminal history, what your points would be, where there would

25   be additional enhancements or reductions under the sentencing

1  guidelines.

2          And the government is reserving the right to freely

3  comment and to advance any interest that it has in sentencing,

4  including asking for sentence more than the statutory maximum.

5  You understand all that?

6          DEFENDANT WHITMORE:  I understand.

7          THE COURT:  And do you agree?

8          DEFENDANT WHITMORE:  I agree.

9          THE COURT:  Is there anything else either party

10  believes should be covered that I have not previously covered

11  respecting this waiver of right to jury trial and the

12  collateral agreements that we have just gone through that Mr.

13  Whitmore has agreed to in giving up very substantial and

14  significant rights of trial?

15          MR. LITMAN:  No, Your Honor.

16          MR. CONKLIN:  Not on behalf of the government, Your

17  Honor.

18          THE COURT:  Mr. Whitmore, having gone all through

19  this now, and knowing how significant the waivers you have

20  made are, how many rights you have given up, are you

21  still -- you still comfortable?  Do you still want to do it?

22          DEFENDANT WHITMORE:  I still want to do this, yes.

23          THE COURT:  All right.  Then it is the finding of the

24  court that the waivers just taken in open court are knowing,

25  they are voluntary.  Mr. Whitmore is articulate.  He appears

1   to be highly intelligent.  He has the competence to enter into
2   this series of waivers, not only a jury trial, but the other
3   rights of trial which he's given up.

4          And it appears to me that there is a factual and a
5   legal justification for me to find that it is a supportable
6   waiver of the right to jury trial and related rights for all
7   the reasons I've previously stated on the record which I
8   incorporate by this reference.

9          Therefore, your waiver of the right to jury trial is
10  now accepted and your waiver of the additional rights that
11  I've just gone through, which would be rights at trial, is
12  also accepted.

13         And we will proceed in this case and the case is
14  confirmed for a bench trial to commence at nine a.m. on April
15  the 20th, 2004.

16         MR. LITMAN:  Very good.  Thank you, Your Honor.

17         MR. CONKLIN:  Thank you, Your Honor.

18         THE COURT:  You're welcome.

19         All right.  Let me ask are we now going to go to Mr.
20  Boobar?

21         MR. CONKLIN:  Yes, I believe we're concluded with Mr.
22  Whitmore.  I guess we should make sure from Mr. Litman's
23  perspective.  He prefaced his comments.

24         THE COURT:  There were a series of motions in limine,
25  which I'm prepared to rule on.  Many of them have been mooted

1   by this.

2           MR. LITMAN:  I agree.  I think -- based on our

3   agreement, I think they're all moot.

4           THE COURT:  All right.  Again, I'm happy to hear any

5   motion you have in limine that you wish the Court to consider

6   and decide.  And if there is anything further, I am here to

7   decide.

8           MR. LITMAN:  I was going to ask if we could approach

9   with Mr. Conklin and Mr. Fogderude just on a logistical

10  matter.

11          THE COURT:  Yes.

12          (There was a discussion between the Court and counsel

13          at sidebar, not reported.)

14          THE COURT:  Let me confirm.  We're back on the record

15  in United States versus Whitmore.  Anything further in this

16  case?

17          MR. LITMAN:  Your Honor, the only concern I have was

18  our motion in limine concerning the *Miranda* issue.

19          THE COURT:  Yes.

20          MR. LITMAN:  Speaking with Mr. Conklin, based on the

21  Court's acceptance of our agreement, it's my understanding

22  he's not going to -- he doesn't intend to offer any denial or

23  statement by Mr. Whitmore post arrest.  And therefore I think

24  that motion is moot along with the other motions that we've

25  made.

1          MR. CONKLIN:  Right.  By reaching that agreement, we
2     don't mean to imply we felt there was a violation, we just
3     feel --
4          THE COURT:  Understood.
5          MR. CONKLIN:  -- that based on the evidence we
6     need --
7          THE COURT:  And again, I'm not sure I saw anything
8     that was incriminating that he said.
9          MR. CONKLIN:  Correct.
10          MR. LITMAN:  I won't say anything.
11          THE COURT:  All right.  Anything further in the
12     Whitmore case before we take a recess?
13          MR. CONKLIN:  No, Your Honor.
14          MR. LITMAN:  Just so there's no question.  We're
15     going to be back here on Tuesday.
16          THE COURT:  Nine a.m. Tuesday morning --
17          MR. LITMAN:  At nine a.m.
18          THE COURT:  -- for trial.  All right.  Let's stand in
19     recess until ten minutes after three.
20          (Recess.)
21          (The proceedings were concluded at 2:56 p.m.)
22          I, KAREN L. LOPEZ, Official Reporter, do hereby
23     certify that the foregoing transcript as true and correct.
24
25     DATED:_____9-14-06_____    _____
                                      KAREN L. LOPEZ